**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>John Marshall</u>

    **v.**                                    Civil No. 14-cv-239-PB
                                                 Opinion No. 2015 DNH 010
<u>Carolyn W. Colvin,</u>
<u>Acting Commissioner,</u>
<u>Social Security Administration</u>


<u>**MEMORANDUM AND ORDER**</u>


John Marshall seeks judicial review of a decision by the
Commissioner of the Social Security Administration denying his
application for disability insurance benefits.  The
Administrative Law Judge ("ALJ") below determined that Marshall
could not work in jobs that impose strict production quotas but
she later omitted that limitation when she asked the vocational
expert to identify jobs in the national economy that Marshall
could perform.  For the reasons I discuss below, this omission
requires a remand for further administrative proceedings.


## I.  BACKGROUND

Pursuant to this Court's Local Rule 9.1, the parties have
submitted a statement of stipulated facts which, because it is
part of the Court's record (Doc. No. 9), need not be recounted

in this Memorandum and Order.  Facts relevant to the disposition of this matter are discussed below.

## II.  <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  My review "is limited to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).

Findings of fact made by the ALJ are accorded deference as long as they are supported by substantial evidence.  Id. Substantial evidence to support factual findings exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'" Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  If the substantial evidence standard is met, factual findings are conclusive even if the record "arguably could support a

different conclusion."  Id. at 770.  Findings are not
conclusive, however, if they are derived by "ignoring evidence,
misapplying the law, or judging matters entrusted to experts."
Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).
The ALJ is responsible for determining issues of credibility and
for drawing inferences from evidence in the record.  Irlanda
Ortiz, 955 F.2d at 769.  It is the role of the ALJ, not the
court, to resolve conflicts in the evidence.  Id.

### III.  ANALYSIS

        The ALJ denied Marshall's claim at Step Five of the
sequential process prescribed by 20 C.F.R. § 404.1520(a)(4).
Tr. at 23-24; see 20 C.F.R. § 404.1520(a)(4).  At that stage,
the Commissioner must "demonstrate that there are jobs in the
national economy that [the] claimant can perform" before she may
find that the claimant is not disabled.  Heggarty v. Sullivan,
947 F.2d 990, 995 (1st Cir. 1991).  For the Commissioner's
denial of benefits to survive judicial review, substantial
evidence must support her conclusion that such jobs exist.
Rosado v. Sec'y of Health & Human Servs., 807 F.2d 292, 293-94
(1st Cir. 1986).

Where, as here, a claimant's severe impairments are
nonexertional, the Commissioner ordinarily meets her burden at
Step Five by calling a vocational expert to testify. E.g.,
Heggarty, 947 F.2d at 996; Ortiz v. Sec'y of Health & Human
Servs., 890 F.2d 520, 524 (1st Cir. 1989); Lugo v. Sec'y of
Health and Human Servs., 794 F.2d 14, 17 (1st Cir. 1986).  A
vocational expert's testimony, however, can furnish substantial
evidence for the Commissioner's finding at Step Five that a
claimant is not disabled only if the expert's testimony fully
addresses the claimant's residual functional capacity ("RFC") as
determined by the ALJ prior to Step Four.  As the First Circuit
has explained, "in order for a vocational expert's answer to a
hypothetical question to be relevant, the inputs into that
hypothetical must correspond to conclusions that are supported
by the outputs from the medical authorities." Arocho v. Sec'y
of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982); see
also Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002); Aubeuf
v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981); Sloan v. Astrue,
538 F. Supp. 2d 152, 156 (D.D.C. 2008).  That principle controls
here.

The ALJ determined that Marshall's RFC included the

4

following four nonexertional limitations:

> (1) That Marshall "should avoid hazards such as unprotected heights and dangerous moving machinery";

> (2) That Marshall "would be limited to uncomplicated tasks," or those "that can typically be learned in thirty days or less";

> (3) That Marshall's "concentration, persistence, and pace would be reduced to the point that productivity would be no more than ten percent below the norm"; and

> (4) That Marshall "could not perform work with strict production quotas."

Tr. at 17.  When she asked the vocational expert about jobs in the national economy that a hypothetical person with these limitations could perform, the ALJ did not include the fourth limitation regarding strict production quotas.  Tr. at 17, 56-59.  Responding to the ALJ's hypothetical, the vocational expert testified that such a person could work as an automotive detailer, an automatic car wash attendant, a ticket seller/taker, or a small products assembler.  Tr. at 57-58.  The vocational expert's opinion, however, was based on an incomplete set of limitations that does not fully reflect Marshall's RFC.  See Tr. at 56-59.  For that reason, the vocational expert's testimony cannot independently meet the Commissioner's burden at Step Five.  See Arocho, 670 F.2d at 375; Gallagher v. Astrue,

2009 DNH 048, 23-24 (remand required where vocational expert opined on a hypothetical that did not include each of claimant's limitations).

The Commissioner does not dispute that the ALJ failed to include the strict production quota limitation in the hypothetical she presented to the vocational expert.  <u>See</u> Doc. No. 8-1 at 7.  Instead, she argues that the ALJ's omission was harmless "because even if the ALJ had presented the additional limitation to the [vocational expert,] it would not have changed [the vocational expert's] finding that [Marshall] could perform a significant number of jobs."  <u>Id.</u>  Whether this prediction is accurate is beside the point.  The Commissioner's conclusion that jobs exist in the national economy that Marshall can perform must be supported by substantial evidence to avoid remand.  <u>See</u> <u>Rosado</u>, 807 F.2d at 292.  As I have explained, the vocational expert's testimony, standing alone, cannot satisfy the Commissioner's burden because it does not incorporate all of Marshall's limitations.  And fatally for the Commissioner, the other source to which she points — the Dictionary of Occupational Titles — does not satisfy her burden, either.

The Commissioner maintains that the Dictionary of

6

Occupational Titles provides substantial evidence for the
Commissioner's conclusion that the strict quota production
limitation would not prevent Marshall from working in the
occupations identified by the vocational expert.  See Doc. No.
8-1 at 8-9.  The Dictionary entries for the four occupations
that the vocational expert identified, the Commissioner
observes, make no mention of a strict production quota
limitation.  See id.  That silence, the Commissioner argues,
provides substantial evidence for the conclusion that the four
occupations identified by the vocational expert do not require
fulfillment of strict production quotas.  See id.

The Commissioner is correct that the Dictionary's
descriptions of the occupations named by the vocational expert
make no mention of a strict production quota, but this silence,
without more, does not validate the Commissioner's argument.[1]  In

---

[1] As an initial matter, I note that whether the Commissioner can
ever rely on the Dictionary in place of vocational expert
testimony at Step Five when the claimant's RFC includes
nonexertional limitations appears to be an unsettled question.
Compare Fields v. Bowen, 805 F.2d 1168, 1170-71 (5th Cir. 1986)
(holding that the Dictionary cannot substitute for vocational
expert testimony "or other similar evidence" at Step Five) with
Peterson v. Chater, 96 F.3d 1015, 1016 (7th Cir. 1996)
(recognizing "vocational dictionary" as acceptable source at
Step Five).  The First Circuit has not taken a clear position on
this question.  Instead, the Circuit has instructed only that

effect, the Commissioner's position would require a holding that
the mere omission of a given limitation from a certain
occupation's Dictionary description provides substantial
evidence that the limitation does not apply to that occupation.
I am unpersuaded by the Commissioner's argument.  The
Commissioner has cited no authority establishing that the
Dictionary includes an exhaustive list of limitations for each
occupation it describes.  In fact, taking the directly opposite
view, other courts have recognized that "the [Dictionary] is not
comprehensive, in that it cannot and does not purport to include
each and every specific skill or qualification for a particular
job."  Carey v. Apfel, 230 F.3d 131, 145 (5th Cir. 2000); see
also Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir. 1999).[2]  For

---

where a claimant is found to have nonexertional limitations, "it
is likely that the testimony of a vocational expert will
typically be required."  Gagnon v. Sec'y of Health and Human
Servs., 666 F.2d 662, 666 n.9 (1st Cir. 1981) (emphasis added);
see also Heggarty, 947 F.2d at 996 ("Usually, testimony of a
vocational expert is required" where claimant is found to have
nonexertional limitations) (emphasis added).  As I explain in
this Memorandum and Order, however, the Dictionary would not
provide the Commissioner with sufficient evidence even if it
could otherwise serve as a substitute for vocational expert
testimony.  Therefore, this case does not require me to reach or
resolve this question.

[2] Moreover, the Dictionary entries for each of the four
occupations named by the vocational expert specifically identify

these reasons, one court has observed that it "would be manifestly inappropriate to make the [Dictionary] the sole source of evidence concerning gainful employment." Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994).  Given the Dictionary's general and necessarily incomplete structure, I will not construe the Dictionary's silence as substantial evidence that an unmentioned limitation does not apply to a particular occupation.

Resisting this conclusion, the Commissioner cites several cases that, she argues, establish that "courts [may look] to the [Dictionary] itself in determining whether particular jobs entail production quotas or fast-paced production."  Doc. No. 8-1 at 9.  Some courts have indeed done so, but only where the Dictionary clearly and unambiguously establishes that a limitation not posed to a vocational expert does not apply to a

---

certain limitations that do not apply to those occupations.  If the Dictionary included an exhaustive list of each occupation's applicable limitations, this specification would be redundant and unnecessary.  See "Automobile Detailer," Dictionary of Occupational Titles 915.687-034, 1991 WL 687878 (noting that "Climbing" is "Not Present" in that occupation's setting); "Car Wash Attendant, Automatic," Dictionary of Occupational Titles 915.667-010, 1991 WL 687869 (same); "Ticket Seller," Dictionary of Occupational Titles 211.467-030, 1991 WL 671853 (same); "Assembler, Small Products II," Dictionary of Occupational Titles 739.687-030, 1991 WL 680180 (same).

particular occupation.  See, e.g., Caldwell v. Barnhart, 261 F. App'x 188, 190 (11th Cir. 2008) (ALJ's omission of limitation from hypothetical posed to vocational expert was harmless where Dictionary unambiguously established that limitation did not apply to occupations named by expert).[3]  Here, by contrast, the Dictionary makes no mention at all of the strict production quota limitation in describing the four occupations named by the vocational expert.  In the absence of adequate vocational expert testimony, such silence, without more, cannot meet the Commissioner's burden at Step Five.

Moreover, in each of the cases cited by the Commissioner, the ALJ did include the production quota limitation in the hypothetical posed to the vocational expert.  See Kelly v. Astrue, No. CV-11-3295-JCG, 2012 WL 1439354, at *4 (C.D. Cal. Apr. 26, 2012); Scott v. Comm'r of Soc. Sec., No. 1:10-CV-0061, 2011 WL 720198, at *3 (N.D. Ohio Jan. 25, 2011); Masek v. Astrue, No. 08-C-1277, 2010 WL 1050293, at *9 (N.D. Ill. Mar. 22, 2010).  Thus, the vocational expert testimony in those cases

---

[3] I intimate no view on whether this approach is permissible in this Circuit.  See supra note 1.  Instead, I recognize only that this approach appears to mark the greatest extent to which an ALJ can rely on the Dictionary in the absence of adequate vocational expert testimony.

itself provided substantial evidence for those ALJs' Step Five denial of benefits.  Those courts considered the Dictionary only to establish that no conflict existed between the Dictionary and the vocational expert opinions.  See Kelly, 2012 WL 1439354, at *3-4; Scott, 2011 WL 720198, at *9; Masek, 2010 WL 1050293, at *23.  Here, of course, the vocational expert did not opine on production quotas because the ALJ never asked him to do so.  The Commissioner seeks to use the Dictionary's silence not to validate vocational expert testimony, as the courts to which she cites did, but rather to independently provide substantial evidence for the ALJ's Step Five conclusion.  As I have explained, the Dictionary's silence cannot serve that purpose, and the cases she cites are not to the contrary.

## IV.   CONCLUSION

The ALJ erred by omitting the strict quota limitation from the hypothetical she posed to the vocational expert, and the Dictionary of Occupational Titles does not render that error harmless.  Thus, the ALJ's decision to deny Marshall's application for benefits at Step Five lacks substantial evidence.  Accordingly, I grant Marshall's motion to reverse the

Commissioner's decision (Doc. No. 7) and deny the Commissioner's motion to affirm her decision (Doc. No. 8).  Pursuant to sentence four of 42 U.S.C. § 405(g), I remand the case to the Social Security Administration for further proceedings consistent with this decision.[4]

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

January 20, 2015

cc:  Ruth Dorothea Heintz, Esq.
     Robert J. Rabuck, Esq.

---

[4] Marshall offered other arguments in favor of remand.  See Doc. No. 7-1.  Because I grant remand on the basis of the ALJ's failure to pose a complete hypothetical to the vocational expert, however, I need not reach Marshall's other arguments.